# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

HENRY LEE BRADLEY,  )
#141371,  )
  )  CIVIL ACTION NO. 9:15-2741-TLW-BM
Petitioner,  )
  )
v.  )  **REPORT AND RECOMMENDATION**
  )
ROBERT M. STEVENSON, III,  )
Warden,  )
  )
Respondent.  )
_____)

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on July 9, 2015.[1]

The Respondent filed a return and motion for summary judgment on December 2, 2015. As the Petitioner is proceeding pro se, a Roseboro order was filed on December 3, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case.

After Petitioner was granted an extension of time to respond and failed to do so, the undersigned recommended dismissal of this Petition for failure to prosecute. However, after Petitioner subsequently filed a memorandum in opposition to summary judgment on February 23, 2016, the Report and Recommendation for dismissal was vacated. Respondent's motion for summary

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

1



judgment is now before the Court for disposition.[2]

## Procedural History

Petitioner was indicted in Dorchester County in March 2009 for armed robbery [Indictment No. 09-GS-18-0308]. (R.pp. 347-348). Petitioner was represented by Mitchell Farley, Esquire, and after a jury trial on July 7-8, 2009, was found guilty as charged. (R.pp. 1-241). As Petitioner had three prior convictions for armed robbery, he was sentenced to life imprisonment without the possibility of parole (LWOP). (R.pp. 239-240).

Petitioner filed a direct appeal in which he was represented by Kathrine Hudgins, Appellate Defender with the South Carolina Commission on Indigent Defense. Counsel filed an Anders[3] brief seeking to be relieved and raising the following issue:

> Did the trial judge err by denying the motion to suppress the show-up identification of appellant as unduly suggestive and unreliable and the resulting in-court identification as tainted by the prior suggestive procedure?

See Court Docket No. 18-3, p. 4.

Petitioner also filed his own pro se brief raising this issue, as follows:

> Did the trial court err by not suppressing the suggestive and unreliable in-court and show-up identification procedure's that were done in the appellant's case?

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Anders v. California, 386 U.S. 738 (1967). Anders requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Anders, 386 U.S. at 744.



<u>See</u> Court Docket No. 18-4.

On June 30, 2011, the South Carolina Court of Appeals relieved counsel and dismissed the direct

appeal. <u>See</u> Court Docket No. 18-5. The remittitur was issued on July 20, 2011. <u>See</u> Court Docket

No. 18-6.

        On November 2, 2011, Petitioner filed an application for post-conviction relief

("APCR") in state circuit court; <u>Bradley v. State of South Carolina</u>, No. 2011-CP-18-2176; (R.pp.

248-254 & Attachment);  raising the following issues:

> **Ground One**: Applicant was denied his right to effective assistance of trial counsel in violation of <u>Strickland v. Washington</u>.
>
> **Ground Two:** Applicant was denied his 6th Amendment right to counsel and his Due Process right to a fair trial free from a conflict of interest.
>
> **Ground Three:** Fatal variance between indictment charging Applicant with armed robbery with a gun and proof. That victim never saw an actual gun. But a handle of what he thought was a gun is fatal to the indictment.
>
> **Ground Four:** Error of the trial court in failing to grant motion for directive verdict of acquittal based upon it improper determination as to the validity and/or proof of the evidence in the case.
>
> **Ground Five:** The trial court committed reversible error in admitting unreliable, overly suggestive one on one show up identification evidence of victim's testimony in trial.
>
> **Ground Six**: Ineffective assistance of appellate counsel.  Failure to raise any reviewable meritorious issue in applicants direct appeal.  Brief of Appellant.

(R.pp. 255-256).

        Petitioner was represented in his APCR by Charles Brooks, Esquire, who filed an

amended application adding two (2) additional grounds:

> **Ground Seven**: Failure of the trial court to re-charge the jury on the difference between armed robbery and strong armed robbery.

3



**Ground Eight**: Biased jury selection process.

An evidentiary hearing was held on Petitioner's application on November 2, 2012. (R.pp. 305-331). In an order dated December 5, 2012 (filed on December 20, 2012), the PCR judge denied relief on the APCR in its entirety. (R.pp. 332-346).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Lanelle C. Durant, Appellate Defender with the South Carolina Commission on Indigent Defense, who raised the following issues:

> **Ground One:** Did the PCR court err in failing to find trial counsel ineffective for not renewing his objection to the single person show-up identification procedure and the in-court identification and to the items seized from the car which was prejudicial to petitioner?
>
> **Ground Two:** Did the PCR court err in failing to find trial counsel ineffective for not calling petitioner's niece to testify at trial that the car he was driving when stopped belonged to her and the cap and gloves, which matched the description of those worn by the robber, found in the car belonged to her children?

See Court Docket No. 18-7, p. 3.

On January 27, 2015, the South Carolina Court of Appeals denied Petitioner's writ of certiorari. See Court Docket No. 18-10. The Remittitur was sent down on February 12, 2015. See Court Docket No. 18-11.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

> **Ground One:** Unreasonable Determination by State Court on grounds out-lined under the Constitution of the United States.
>
> **Ground Two:** Petitioner was denied his Sixth Amendment right to counsel, due process, and a fair trial free from Conflicting interest.
>
> **Ground Three:** Fatal variance within the indictment charging armed robber in

4



[comparison] with the evidence introduced at trial.

**Ground Four:** Ineffective Assistance of Counsel, in violation of Petitioner's Sixth Amendment rights.

**Ground Five:** Petitioner here argues that he was also denied the effective assistance of counsel where counsel "failed to challenge and/or object to the notice to seek an enhanced sentence pursuant to S.C. Code § 17-25-45."

See Petition, pp. 5-9 & Attachment, p. 14.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

In Ground One, Petitioner contends that there was an unreasonable determination by the state court on grounds outlined under the Constitution of the United States. In this claim, Petitioner appears to be complaining about alleged errors occurring in his PCR proceedings, including that his PCR counsel was ineffective for failing to preserve all PCR or meritorious issues with the



highest state court of appeals.

Initially, the undersigned is constrained to note that allegations concerning alleged infirmities occurring in state PCR proceeding are not generally a basis for federal habeas relief.  See Bryant v. Maryland, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995), cert. denied, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."].  Further, while ineffective assistance of PCR counsel can constitute "cause" for a default of an *underlying claim* under certain circumstances, it is not itself an independent claim.[4]  See 28 U.S.C. § 2254(i)["The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."]; Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1320  (2012) [acknowledging that § 2254(i) precludes [a habeas petition] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"](quoting Holland v. Florida, 130 S.Ct. 2549, 2563 (2010)); Auls v. Cohen, No. 11-2930, 2013 WL 496239 at *3 (D.S.C. Feb. 6, 2013)[finding allegation that "PCR counsel was ineffective . . . is not a proper basis

---

[4]Petitioner appears to assert that PCR counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim regarding his trial  counsel's actions with respect to a failure to investigate and call his niece as a witness.  However, that issue *was* preserved by PCR counsel, and is discussed herein as part of Ground Four.   Therefore, while deficiencies in Petitioner's PCR proceedings do not, standing alone, entitle him to relief, the undersigned has discussed the underlying claim of ineffective assistance of trial counsel Petitioner raises here on the merits.  See discussion (Ground Four), infra.



for a § 2254 petition," citing 28 U.S.C. § 2254(i)].[5]

Therefore, Petitioner has failed to state a basis for relief based on any alleged ineffective assistance of counsel in his PCR proceeding. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief]; Wright v. Angelone, 151 F.3d 151, 159 (4th Cir.1998) [alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action]; Nichols, 69 F.3d at 1275. Ground One should be dismissed.

## II.

In Ground Four[6], Petitioner contends that his trial counsel was ineffective for failing to investigate and call his niece as a witness during his trial, by failing to make contemporaneous objections to the admission of evidence seized when he was arrested, and by failing to make a contemporaneous objection to testimony which resulted in the overly suggestive unreliable one-on-one show up identification. Petitioner raised these claims in his state APCR, where he had the burden of proving the allegations in his PCR petition, as well as on appeal to the South Carolina Court of Appeals. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); see also R.p. 225; Court Docket No. 18-7, p. 3. Therefore, they are properly exhausted for purposes of

---

[5]The undersigned also notes that, while ineffective assistance of PCR counsel can constitute "cause" for a procedural default of a claim, ineffective assistance of PCR appellate counsel does not. See discussion, infra. This distinction comes into play in the undersigned's analysis of some of Petitioner's other Grounds for relief, where Petitioner argues that his "cause" for procedurally defaulting those Grounds was ineffective assistance of PCR appellate counsel. See discussion, infra.

[6]Because some of the factual findings and analysis for Ground Four of the Petition relate to Petitioner's other claims, which are all procedurally barred, Ground Four is discussed prior to a discussion of these other claims.



federal habeas review.  The PCR court rejected these and other claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Bradley v. State of South Carolina, No. 2011-CP-18-2176.

    Specifically, the PCR judge found that: 1) trial counsel testified by describing the case as one where the State had overwhelming evidence of Petitioner's guilt as Petitioner was pulled over for speeding and a tailgate infraction while fleeing from the scene of the crime, had the toy gun and various other items used to commit the armed robbery in the automobile, and had nearly the exact denominations taken from the convenience store in the vehicle at the time of his arrest; 2) counsel testified that during numerous conversations with Petitioner, he was informed that Petitioner was driving his niece's automobile at the time of his arrest and that several key pieces of evidence, including the hat, wig with dreadlocked hair, and toy gun, belonged to her children; 3) counsel testified that he contacted and spoke with Petitioner's niece after receiving this information from the Petitioner; 4) counsel testified that he also subpoenaed Petitioner's niece for trial and stated that she was present throughout the trial; 5) counsel testified that he ultimately decided not to call her as a witness, as he wanted to preserve the right to the last closing argument so as to have the final word before the jury began its deliberations; 6) moreover, counsel testified that he did not think the niece's testimony would be beneficial to Petitioner's case, as his niece was merely able to corroborate that the various items used to commit the robbery were in the vehicle Petitioner was driving and within his control at the time of the crime;

    7) counsel's performance was reasonable and effective; 8) Petitioner failed to establish any prejudice resulting from counsel's alleged ineffective assistance of counsel, as he failed to provide the Court with any evidence of how calling his niece as a witness at trial would have



impacted his trial; 9) moreover, Petitioner's niece was not called to present testimony at the evidentiary hearing and did not submit an affidavit to the PCR court indicating what her testimony would have been if called at trial; 10) additionally, counsel stated that the "most damning evidence against [Petitioner] was that the exact denominations of currency was found in the car" with Petitioner at the time of his arrest; 11) Petitioner failed to prove that counsel was ineffective on this basis;

12) counsel testified that he moved to exclude the show-up lineup identification of Petitioner by the victim during pre-trial motions and that this motion was denied by the trial court; 13) counsel's testimony was supported by the trial transcript, which shows that three witnesses were called during this motion hearing, each of whom was cross-examined by counsel; 14) additionally, counsel testified that he moved to suppress the items that were seized from the automobile at the time of the arrest, which was also denied by the trial court; 15) again, counsel's testimony was supported by the trial transcript; 16) counsel also testified that he renewed his objections to the items seized from the automobile when these items were introduced into evidence, which was also supported by the trial transcript[7]; 17) trial counsel's performance was reasonable and effective; and 18) Petitioner has failed to show any prejudice.  (R.pp. 336-339. 344).[8]

---

[7]Although not outcome determinative on this issue since Petitioner has also failed to show prejudice, the PCR court findings appear to contain errors where the PCR court found that counsel testified that he had made contemporaneous objections during the trial and that such testimony was confirmed by the trial record.  However, it appears counsel actually made his motions to exclude this evidence *prior* to the start of the trial, and those motions were denied at that time.  See (R.pp. 46, 67-69, 86-89, 135, 172-175).

[8]While the PCR court also made additional findings, those findings relate to issues that are either procedurally barred in these proceedings or not raised in these proceedings, and have therefore not been set forth above.  (R.pp. 334-346).



Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland, 466 U.S. at 698; Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Even so, with regard to Petitioner's ineffective assistance of counsel claims which were adjudicated on the merits by the South Carolina state court(s), this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established



federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

   Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694.  In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  <u>Mazzell v. Evatt</u>, 88 F.3d 263, 269 (4th Cir. 1996).  For the reasons set forth and discussed hereinbelow, the undersigned finds that Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard.  <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

   The record reflects that at a pre-trial hearing held on counsel's motions, counsel moved to suppress a video that was produced to the defense at the last minute.  (R.pp. 42-43).  The State initially argued that they did not believe the video showed anything because of its poor quality, but shortly before trial, new equipment was used and they were able to obtain a better picture.  (R.p.



43). However, after Petitioner's counsel objected to the video, the State represented that it did not intend to use the video and the Court granted counsel's motion to suppress it. (R.p. 43). There is nothing ineffective about trial counsel's actions with respect to this video.[10]

Petitioner's counsel also made a motion immediately prior to trial to exclude all of the physical evidence that was obtained during the traffic stop. (R.p. 46). At the hearing on this motion, Officer Sherri Driggers testified that she had received a general dispatch that an armed robbery had occurred, and when she started going in that direction she encountered a car speeding in the opposite direction. (R.pp. 48-49). Driggers testified that when she turned to move behind the car, she saw an additional violation of no tail lights and that the turn signal was illuminated, but not flashing. (R.p. 49). Driggers testified that when she then pulled the vehicle over, she saw some white gloves, a hat, and a dreadlocks wig that matched the description from the robbery. (R.pp. 51, 58-60). Driggers then asked Petitioner to exit the vehicle, handcuffed him, and called in that she possibly had the armed robbery suspect. (R.p. 52). When Lt. Thomas Peterson arrived, he walked up to the car and saw the same items that Driggers had observed. (R.pp. 52-53, 64). Lt. Peterson testified that when Driggers called to say that she might have the robbery suspect, approximately fifteen (15) to twenty (20) minutes had passed since the robbery. (R.p. 63). Peterson patted down the Petitioner and searched the car. (R.pp. 53, 64-65). Peterson testified that he patted down the Petitioner because he was a suspect in the armed robbery and that he noticed bulges in both of Petitioner's pockets. (R.p. 65). A search found cash and a cell phone on the Petitioner, and additional cash in the car along with a

---

[10]Although this particular video (from the convenience store where the robbery occurred) was not admitted into evidence and is not part of the issues raised in Ground Four, there was a second video (of the traffic stop) that *was* used. The findings with respect to this first video are referenced to clarify that there was more than one video at issue before the state court.

12



cap-gun pistol. (R.pp. 53, 64-65). Peterson then identified the Petitioner as the individual who was in the car. (R.pp. 65-66). After listening to argument from both counsel, the Court held that the police were within their rights to conduct a search and denied counsel's motion to suppress. (R.pp. 67-69).

The record further reflects that Petitioner's counsel also made a pretrial motion dealing with the identification of the Petitioner. (R.p. 69). With respect to this motion, Clyde Brothers, the victim, testified about the robbery and the description that he gave the operator when he called the police. (R.pp. 71-72). He testified that he told the operator that the robber was a black male in his late 30s or early 40s, over six feet tall, with a hat and dark sweat shirt. (R.p. 72). When the officer came, Brothers testified that he gave him a little more detail, including describing the ball cap, longer hair, dark blue hoodie, leather work gloves, blue jeans, and sneakers. (R.p. 72). Brothers testified that the officers then took him to the Parkway to see if he could identify the person they had stopped to see if it was the person who had robbed him. (R.pp. 72-73). Brothers testified that when he saw the Petitioner, he told them that the face was the same, but that the hair was different and he was not wearing the same sweatshirt. (R.p. 73). The police then asked him some additional questions at the scene, including about the ball cap, which Brothers told them was a multi-colored one - dark green, blue and white, and the police responded that they had pulled one like that from the car. (R.p. 74). The police also asked Brothers about the work gloves, and he told them they were similar to the ones that the police had pulled from Petitioner's car. (R.p. 74).

Petitioner's counsel then asked Brothers to review his statement that he had given the police. (R.pp. 77-78). Brothers testified that he told the police that Petitioner was not dressed the same as the robber in the store, but that his face was similar to the robber's face, although it was hard



to tell with the flashing light, at which time Officer Allison turned on the spotlight for him.  (R.p. 78).

Brothers also testified that he told the police that the man's hair was different, but that the wig they

showed him was similar to the robber's hair.  (R.pp. 78-79).  He also testified that the hat was the

same and that the gloves were similar.  (R.p. 79).  Officer Steve Allison then testified that he was the

one who took Brothers to the Parkway to see if he could identify the Petitioner.  (R.pp. 80-81).  He

testified that he illuminated his light at the back of the car, and Peterson showed Brothers the light

blue hoodie, hat, and gloves that he had described.  (R.p. 82).  Peterson confirmed that Allison had

brought the victim to the scene and that he [Peterson] had brought items out of the vehicle including

the hair, the hat, and the gloves for Brothers to see.  (R.p. 85).  A video of the photo identification

was then played for the trial court.  (R.p. 86).  After counsel for the State and Petitioner made their

legal arguments, the Court ruled to allow the evidence in based on the current law in South Carolina.

(R.pp. 86-89).

Subsequently, when the State moved at trial to admit the video from the traffic stop[11]

into evidence that had been played earlier in the motion hearing, the Court confirmed that counsel

had no objections, other than those stated earlier (which counsel confirmed), following which the

video was admitted.  (R.p. 135).  When the State later offered the hat, gloves, plastic gun, and blue

hoodie into evidence at trial, Petitioner's counsel did not make any objections at that time.  (R.pp.

172-175).  As noted, Petitioner asserts that his trial counsel was ineffective for failing to make a

contemporaneous objection when this evidence was offered at trial.

Although counsel had previously objected to this evidence, the law with respect to this

---

[11]The video the Court had ruled could be admitted, not the one from the convenience store on
which the Court had granted the motion to suppress during the pretrial hearing.



issue can be complicated, as generally

> [a] ruling in limine is not final; unless an objection is made at the time the evidence
> is offered and a final ruling procured, the issue is not preserved for review. See State
> v. Wannamaker, 552 S.E.2d 284, 286 (2001). An exception to this rule is when the
> motion in limine is made "immediately prior to the introduction of the evidence in
> question." State v. Forrester, 541 S.E.2d 837, 840 (2001). The South Carolina
> Supreme Court expanded this exception in State v. Wiles, holding that even when the
> evidence does not immediately follow the motion in limine, if the trial court clearly
> indicates its ruling is final, rather than preliminary, the issue is preserved for appellate
> review. State v. Wiles, 679 S.E.2d 172, 175 (2009).

See State v. Atieh, 725 S.E.2d 730, 733 (S.C.Ct.App. 2012).

However, in his motion for summary judgment, the Respondent has not argued whether the trial court

did or did not "clearly indicate" that its earlier ruling was final in order to preserve these issues for

appellate review. Rather, Respondent argues that the PCR court correctly found that Petitioner's

counsel made contemporaneous objections at trial when the evidence was introduced. Obviously,

if this were the case, Petitioner's claim about counsel having failed to contemporaneously object

would be without merit. However, the trial transcript does not contain any additional objections at

the time the evidence was actually moved into the record, other than with regard to the video from

the dash cam.[12]

> In any event, even if this Court were to conclude for purposes of summary judgment

that the trial court's earlier rulings on these issues were *not* clearly indicated as final, Petitioner has

not shown that he is entitled to relief on these issues.[13] First, the state PCR court found these issues

---

[12]As previously referenced, when the State moved at trial to admit the video from the dash
cam into evidence that had been played earlier in the motion hearings, the Court confirmed with
counsel that he had no objection "other than those stated earlier". (R.p. 135).

[13]Conversely, assuming arguendo that the trial court's rulings *were* clearly indicated as final,
Petitioner's issues in Ground Four (relating to failure to make contemporaneous objections as to the
(continued...)



were properly preserved and that counsel was therefore not ineffective. (R.pp. 337-339). Petitioner also raised these issues in his PCR appeal and the South Carolina Court of Appeals denied the petition on the issues presented, finding no ineffective counsel.[14]  <u>See</u> Court Docket No. 18-10. Further, even assuming these claims were procedurally barred from appellate review because no contemporaneous objection was made, the only way for Petitioner to show the necessary prejudice for his ineffective assistance of counsel claim is for him to show that the evidence should not have been admitted and that the outcome of his trial would have been different if it had not been admitted. Petitioner has failed to make any such showing, as there is no indication in the record or evidence that the trial court would not have ruled the same way if additional contemporaneous objections had been made.  The evidence presented at trial does not contain any evidence substantially different from what was presented at pretrial such as would indicate the likelihood of a different ruling on these issues. Therefore, Petitioner's "contemporaneous objection" ineffective assistive of counsel claim is without merit.

With respect to the merits of the underlying claims themselves, Petitioner expanded on his claims of counsel error at the PCR hearing.[15]  Petitioner testified at the PCR hearing that the

---

[13](...continued)
evidence seized at the time of Petitioner's arrest and the one-on-one lineup identification) would be without merit, since these issues would have been preserved for appellate review, and therefore there would be no ineffective assistance of counsel claim on this basis.

[14]In the State's memorandum in opposition to Petitioner's PCR appeal, the State noted that the findings of the State PCR court that contemporaneous objection had been made at trial with regard to these issues was not supported by the trial record.  <u>See</u> Court Docket No. 18-7, p. 7.

[15]In addition to discussing Petitioner's testimony on his "contemporaneous objection" claims, some of Petitioner's testimony discussed hereinabove pertains to issues raised in other grounds, which for the reasons set forth, <u>infra</u>, are all procedurally barred.

16



identification lineup should have been suppressed because, although he requested a lineup, he never received one. (R.pp. 310-311). Petitioner also testified that the toy gun should have been suppressed because a lot of kids had been in the vehicle and it could have belonged to anyone, but that his counsel did not investigate these facts. (R.p. 311). Petitioner also testified that his lawyer should have moved to suppress or strike the victim's testimony that he saw a gun, since the victim did not actually see a gun, but rather had said that he saw something like a gray strap on something, but never identified it. Petitioner also testified that his counsel should have challenged the introduction of his prior convictions, but that counsel just went along with them, and that his counsel should have moved to suppress the policeman's identification of him as well as the video of his traffic stop. (R.pp. 312-313). Petitioner testified that the police officer testified that she stopped a white male, rather than a black male. Finally, Petitioner also testified that he believed there was a conflict of interest where counsel who had represented him in 1991 on other charges and had made a false statement which caused that case to be overturned, was allowed to help represent Petitioner in this case. (R.p. 314). On cross examination, Petitioner testified that he told his counsel he wanted a trial, that when they called the victim to the side of the road to identify him that the victim only said that Petitioner resembled the perpetrator, and that the items in the car could have belonged to children who had been in the car. (R.pp. 316-317). Petitioner also testified on cross that with regard to his previous convictions for burglary and grand larceny in 1976, common law robbery in 1981, and his conviction in 1984, that he had pled guilty to all of those charges. (R.pp. 317-318).

Petitioner's counsel testified at the PCR hearing that in his opinion that there was overwhelming evidence of Petitioner's guilt, including that he had been pulled over for speeding heading in the direction away from the crime scene, that there were other additional equipment



violations that the officer noticed when she pulled behind the Petitioner, that when the officer looked in the window of the car there were items in plain view that had been sent out over the radio as being involved in the crime, and that the victim had been brought to the scene and a showup lineup conducted, which counsel testified that he obviously moved to exclude, wherein the victim identified the Petitioner as the person who committed the crime. (R.p. 319). Counsel also testified that an inventory search of the car and a search incident to arrest was conducted, during which a toy gun, a wig, and currency which were the same number and denominations from the robbery were found in the car. (R.pp. 319-320). Counsel testified that he believes there are a lot of problems with showup lineups and that he moved to excluded the lineup results in this case, but that the judge found it was legitimate. (R.p. 320). Counsel also testified that there was a plea offer of thirty (30) years, which was relayed to Petitioner, but that considering Petitioner's age of 51 and his medical conditions, counsel felt like a thirty (30) year sentence would be "essentially LWOP" for the Petitioner. (R.pp. 320-321). With respect to the other counsel to whom Petitioner now objected, counsel testified that John Loy is the Deputy Chief Public Defender for Dorchester County, had represented Petitioner in the past, and they had a good relationship. (R.pp. 321-322). Counsel testified that their office's policy was to have two counsel sitting at the table, and that he told Petitioner that Mr. Loy was going to sit at the table with him, but was not going to ask any questions or say anything. (R.p. 322).

            On cross examination, counsel testified that he reviewed the entire discovery file multiple times and had sent a copy of the discovery file to the Petitioner, and that he shared his opinion with Petitioner that the evidence was overwhelming. (R.p. 323). Counsel testified that he moved at the start of the trial to have the video evidence from the convenience store excluded, and that after counsel made this motion the solicitor decided not to use it so his motion was granted.



Counsel testified that he also sought to suppress the identification of the victim in the showup lineup, but that motion was denied, and that while he disagreed with the law, that based on the law he believed this was a correct ruling. (R.pp. 326-327). Counsel also testified that they moved to exclude the evidence from the search of the vehicle, but that that motion was also denied. (R.p. 327). With regard to any allegations surrounding the State's notice to seek life without parole, counsel testified that the proper procedure for serving the Petitioner with this notice was followed to the letter. (R.pp. 327-328). Counsel also testified that the copies of Petitioner's prior convictions were clerk certified copies, and that there was nothing else that could be done in that regard. (R.p. 328). With regard to a purported discrepancy in the victim's statements about a red stripe being on the gun, counsel testified that he successfully brought out those inconsistencies during the trial, and that even though the gun was a toy gun, that based on the case law that the victim reasonably believed Petitioner was armed with a deadly weapon, he believed Petitioner was properly charged. (R.pp. 327-329). Counsel also again reiterated that Mr. Loy took no active role in the trial and only sat at the defense table, and that he had explained what was going on to the Petitioner and tried to answer any questions that he had. (R.pp. 329-330).

    As has been noted, Petitioner raised the issues in his PCR proceeding about counsel failing to make contemporaneous objections, and the PCR court found that counsel had made motions to suppress and that Petitioner had failed to show any prejudice. (R.pp. 338-339). The state courts obviously found counsel's conduct sufficient to preserve these issues. See also, State v. Wiles, 679 S.E.2d at 175. There is no basis in the record or the applicable caselaw to overturn the findings of the state court with regard to the alleged ineffectiveness of counsel for failing to contemporaneously object at trial. Evans, 220 F.3d at 312. Specifically, Petitioner has failed to present any evidence or



argument sufficient to show that the state court's rejection of these claims amounts to a federal violation or resulted in prejudice so as to warrant federal habeas relief. <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding]; <u>Williams v. Taylor</u>, <u>supra</u>; 28 U.S.C. § 2254(e)(1)[Determination of factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Therefore, Petitioner has not shown the necessary prejudice to establish ineffective assistance of counsel on this part of Ground Four (dealing with counsel failing to make contemporaneous objections), and these claims should be dismissed.

With regard to the remaining claim in Ground Four, that Petitioner's counsel was ineffective for failing to investigate his niece's testimony and call her as a witness, Petitioner testified that he was driving his niece's vehicle when he was arrested but that she was not called as a witness at his trial, and that his niece should have been investigated as well but his trial counsel failed to do so. (R.p. 310). For his part, counsel testified that Petitioner presented his version of the facts to counsel and explained that the items in the car belonged to children, not him, and that he subpoenaed Petitioner's niece and she did tell him that those things belonged to her children. (R.p. 324). However, counsel testified that the problem was that her testimony would only be about who these items belonged to, which did not change the fact that the items were involved in the crime and that Petitioner had them in his possession when he was arrested. (R.pp. 324-325). Therefore, in order to preserve his ability to make the final argument, counsel made the decision, with the Petitioner, not to call any witnesses. Counsel testified that Petitioner was advised of the strategic reason behind this



20

decision, that Petitioner put his own input in, and agreed with the decision. (R.p. 325).

No reversible error or ineffective assistance by trial counsel is presented in this evidence. Counsel did talk to Petitioner's niece, and even subpoenaed her. (R.p. 324). However, while her testimony could have potentially presented evidence that her children owned the items at issue, they were still found to be in *Petitioner's* possession immediately after the robbery. (R.pp. 324-325). Petitioner's counsel therefore made the decision to forego her testimony in order to get to make the last argument to the jury, testifying that he consulted with the Petitioner before doing so. (R.pp. 324-325). The PCR court found counsel's testimony very credible, while the Petitioner's testimony was not credible. (R.pp. 335-336). Furthermore, Petitioner did not produce his niece as a witness in his PCR proceedings, nor has any evidence from her been presented as part of this federal habeas petition, so there has been no establishment of what her testimony would even have been.[16] Therefore, Petitioner has failed to establish the prejudice necessary to succeed on this claim. Bassette v. Thompson, 915 F.2d 932, 940- 941 (4th Cir.1990); cf. Bannister v. State, 509 S.E.2d 807, 809 (S.C.1998) ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Underwood v. State, 425 S.E.2d 20, 22 (S.C. 1992)[prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at post-conviction relief]; Glover v.

---

[16] In his memorandum in opposition, Petitioner expressed his intent to submit an affidavit from his niece at some unknown time in the future. However, in addition to already having received an extension of time to respond and failing to provide any such affidavit, Petitioner also failed to obtain an affidavit from his niece or have her testify in his PCR hearing. Further, although these deficiencies were pointed out to the Petitioner in the PCR court's order in 2012, Petitioner has still not provided any affidavit from his niece in this action, which has been pending since July 2015.



State, 458 S.E.2d 539, 540 (S.C.1995)["[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."]; Clark v. State, 434 S.E.2d 266, 267–268 (S.C.1993) [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different].

       Accordingly, Petitioner has failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell v. Jarvis, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; see generally Bassette, 915 F.2d at 940-941 [Petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony].

       In sum, the undersigned can find no basis in the record or the applicable caselaw to overturn the findings of the state court with regard to Petitioner's claims relating to counsel failing to present Petitioner's niece as a witness at his trial, and for the reasons previously discussed, Petitioner has also failed to show ineffective assistance with respect to trial counsel failing to further challenge the identification procedure or object to the introduction of the items seized from his vehicle after his earlier motions were denied. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Therefore, Ground Four is without



merit and should be dismissed.

### III.

### (Procedural Bar)

With regard to Petitioner's remaining claims in Grounds Two, Three, and Five, Petitioner did not properly pursue and exhaust those claims in state court. Petitioner raised Grounds Two and Five in his initial PCR proceeding (except for the part of Ground Five that he was not advised of the plea offer of 30 years, which was not even raised in his underlying PCR proceeding), but these claims were not pursued in his PCR appeal. As for Ground Three, in which Petitioner challenges the sufficiency of the indictment in this case, this was a direct appeal issue that he did not preserve at trial.

Since these claims were not properly pursued and exhausted in state court, they have not been properly preserved for review by this Court. See White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]. Specifically, since Petitioner did not properly pursue these claims in his state court proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S.



560, 562 n. 3 (1971); <u>Wicker v. State</u>, 425 S.E.2d 25 (S.C. 1992); <u>Ingram v. State of S.C.</u>, No. 97-

7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); <u>Josey v. Rushton</u>, No. 00-547, 2001 WL

34085199 at * 2 (D.S.C. March 15, 2001); <u>Aice v. State</u>, 409 S.E.2d 392, 393 (S.C. 1991)[post-

conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they

are fully exhausted. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735, n.1 (1991); <u>Teague v. Lane</u>, 489 U.S.

288, 297-298 (1989); <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not

been presented to the highest state court nevertheless may be treated as exhausted if it is clear that

the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this

juncture."], <u>cert. denied</u>, 117 S.Ct. 854 (1997); <u>Aice</u>, 409 S.E.2d at 393; <u>Matthews v. Evatt</u>, 105 F.3d

907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly

present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly

presented to the state's highest court is technically met when exhaustion is unconditionally waived

by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later

presented to the state court."], <u>cert. denied</u>, 522 U.S. 833 (1997); <u>Ingram</u>, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because these issues were not *properly*

pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is

now precluded absent a showing of cause and prejudice, or actual innocence. <u>Martinez v. Ryan</u>, 565

U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Waye v.

Murray</u>, 884 F.2d 765, 766 (4th Cir. 1989), <u>cert. denied</u>, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims
> in State court pursuant to an independent and adequate State
> procedural rule, Federal Habeas review of the claim is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of Federal law, or demonstrate that



failure to consider the claims will result in a fundamental miscarriage
of justice.

Coleman, 501 U.S. at 750.

In this case, Petitioner argues as "cause" in his Petition and attachments for failing to raise these claims, that his trial counsel was ineffective for failing to properly preserve Ground Three at trial,[17] his PCR counsel was ineffective for failing to properly preserve Ground Five (part two), and his PCR appellate counsel was ineffective for failing to properly preserve Grounds Two and Five.[18] The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).  However, as noted hereinbelow, Petitioner's Sixth Amendment right to counsel does not afford him relief on these claims.

_____

[17]Although Petitioner did attempt to raise the issue presented in Ground Three in his APCR, he did not present his claim as an ineffective assistance of counsel claim.  The PCR court found that the claim as presented was a direct appeal issue and could not be pursued in his APCR.  (R.p. 343).

[18]While raising these arguments in his Petition, Petitioner only discussed his "cause" to properly preserve Grounds One and Four in his memorandum in opposition to summary judgment. He did not address any "cause" for failure to raise Grounds Two, Three, and Five in his memorandum in opposition.  This distinction is important, because with regard to Grounds Two and Five (part two), Petitioner failed to address the issue that ineffective assistance of PCR appellate counsel cannot constitute "cause" and offers no alternative "cause."  See discussion, infra.  However, with regard to Ground Five (part one), construing Petitioner's petition liberally, Petitioner did allege ineffective assistance of both PCR and PCR appellate counsel as "cause" for his procedural default.



### PCR Counsel

While ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation. Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996). Ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and therefore would not ordinarily constitute "cause" for a procedural default. Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

However, in Martinez the Supreme Court did carve out a "narrow exception" that modified

> "the unqualified statement in Coleman that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." Martinez, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system."



Id. at ___, 132 S.Ct. at 1317.

Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were Coleman read broadly) deprive a defendant of any review of that claim at all. Martinez, supr a at ___, 132 S.Ct. at 1316.

We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); see also Gray v. Pearson, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default. Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."] Therefore, because, under South Carolina law, a claim of ineffective assistance of trial or appellate counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731,



2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); <u>Gray</u>, 526 Fed. Appx. 333; a petitioner's claim of ineffective assistance of PCR counsel as "cause"for his default may be considered under the revised standard of <u>Martinez</u> and <u>Trevino</u>.

Even so, under the first requirement of the <u>Martinez</u> exception, the Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." <u>Gray</u>, 526 Fed. Appx. at 333. Here, with regard to Ground Five (part two) dealing with ineffective assistance of counsel for failure to convey the plea offer, Petitioner has failed to show a substantial claim, as Petitioner's counsel testified at the PCR hearing that he did convey this offer to the Petitioner, but that due to Petitioner's age (fifty-one) and serious health conditions the offer essentially was a life sentence, and that Petitioner did not want to accept the offer under those circumstances. (R.pp. 320-321). Based upon the evidence and the record on this issue, Petitioner has failed to show counsel's performance was deficient and the necessary prejudice under <u>Strickland</u>. Accordingly, Petitioner has failed to establish that Ground Five (part two) is a substantial one in order to be able to proceed on that claim.

With regard to the remaining ineffective assistance of counsel claims in Ground Five (part one)(failing to object or challenge Petitioner's enhanced sentence) and Ground Two (conflict of interest), Petitioner raised these issues in his PCR proceedings, but argues that his PCR appellate counsel failed to properly pursue them on appeal. <u>See</u> Petition, pp. 9, 12. However, ineffective assistance of PCR *appellate* counsel is not cause for a default. <u>Martinez v. Ryan</u>, 565 U.S. ___, ___,



132 S.Ct. 1309, 1316 (2012)[19]; <u>Arnold v. Dormine</u>, 675 F.3d 1082, 1086-1087 (8th Cir. 2012)[failure

of collateral appellate counsel to preserve claims on appeal from post-conviction relief does not

constitute "cause" to excuse a procedural default]; <u>Cross v. Stevenson</u>, No. 11-2874, 2013 WL

1207067 at * 3 (D.S.C. Mar. 25, 2013)["<i>Martinez</i> . . . does not hold that the ineffective assistance of

counsel in a PCR appeal establishes cause for a procedural default.  In fact, the Supreme Court

expressly noted that its holding 'does not concern attorney errors in other kinds of proceedings,

including appeals from initial-review collateral proceedings, second or successive collateral

proceedings, and petitions for discretionary review in a State's appellate courts."](quoting <u>Martinez</u>,

132 S.Ct. at 1320);  <u>Rodriguez v. Padula</u>, No. 11-1297, 2014 WL 1912345 at * 7 (D.S.C. May 12,

2014); <u>Johnson v. Warden of Broad River Corr.</u>, No. 12-7270, 2013 WL 856731 at * 1 (4th Cir. Mar.

8, 2013)[PCR appellate counsel error cannot constitute cause under <u>Martinez</u> exception]; <u>Johnson</u>

<u>v. Cartledge</u>, No. 12-1536, 2014WL 1159591 at *10 (D.S.C. Mar. 21, 2014](same); <u>Lewis v.</u>

<u>Williams</u>, No. 12-3214, 2013 WL 3929993 at *4 (C.D.Ill. July 29, 2013)[Ineffective assistance of

PCR appellate counsel is not a ground for relief under § 2254]; <u>Flowers v. Norris</u>, No. 07-197, 2008

WL 5401675 at * 11 (E.D.Ark. Dec. 23, 2008)[same].

   Therefore, the <u>Martinez</u> exception does not apply to these claims, and any alleged

ineffectiveness of PCR counsel or PCR appellate counsel cannot be "cause" for a procedural default

of Grounds Two and Five (part one).

<b>Trial Counsel</b>

   In Ground Three, Petitioner challenges the sufficiency of his indictment.  This issue

---

 [19]As noted, in <u>Martinez</u> the United States Supreme Court carved out a narrow exception
where ineffective assistance of initial PCR counsel, but not appellate PCR counsel, may constitute
cause for a procedural default.  <u>Martinez</u>, 132 S.Ct. at 1316-1318.



was procedurally defaulted at the trial court level because South Carolina is an issue preservation state; I'On, LLC v. Town of Mt. Pleasant, 526 S.E.2d 716, 724-725 (S.C. 2000); and since this issue was not raised to the trial judge, it could not have been raised on direct appeal.  State v. Powers, 501 S.E.2d at 118; State v. Varvil, 526 S.E.2d 248, 250 (S.C.Ct.App. 2000).  Petitioner claims that ineffective assistance of trial counsel was the "cause" for his failing to preserve Ground Three at his trial.[20]

In order to show cause and prejudice, Petitioner must show that his PCR counsel was ineffective for failing to present a "substantial" claim of ineffective assistance of trial counsel in the PCR proceedings.  Here, Petitioner contends that trial counsel should have objected to the indictment as  an alleged defective indictment.  Petitioner argues that the indictment stated he was armed with a deadly weapon, while the victim only testified that he saw the handle of what he thought was a gun. However, the "sufficiency of an indictment or information is primarily a question of state law".  Tapia v. Tansy, 926 F.2d 1554, 1560 (10th Cir. 1991)](quoting Franklin v. White, 803 F.3d 416, 418 (8th Cir. 1986))(quoting Goodloe v. Parratt, 605 F.2d 1041, 1045 n. 12 (8th Cir. 1979), cert. denied, 481

---

[20]In order for ineffective assistance of trial counsel to constitute "cause" for Petitioner's procedural default of Ground Three, Petitioner must have pursued an ineffective assistance of counsel claim on this basis in state court.  Ineffective assistance of counsel will serve as an excuse for procedural default only when the ineffective assistance of counsel claim has been independently raised and properly preserved in state court. Edwards v. Carpenter, 529 U.S. 446, 453 (2000); Murray v. Carrier, 477 U.S. 478, 489 (1996).  An exception would exist if Petitioner can establish "cause and prejudice" with respect to his failure to raise his ineffective assistance of counsel claim in state court. Id.  Petitioner did not raise this claim in his APCR, however, as he only presented the underlying claim to the PCR Court.  See (R.p. 343).  See also, n. 17, supra.  Even so, he could have raised this issue as part of a "cause" argument for failure of PCR counsel to present this issue, which would in turn require an examination of the underlying claim to see if was a "substantial" claim; that is, whether the underlying claim "has some merit." Gray, 526 Fed.Appx. at 333.  Out of an abundance of caution, the undersigned has conducted an analysis of this underlying claim hereinabove to determine whether it is a "substantial" claim under Gray.



U.S. 1020 (1987)), <u>cert. denied</u>, 502 U.S. 835 (1991).  Deficiencies in state court indictments "are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process."  <u>Ashford v. Edwards</u>, 780 F.2d 405, 407 (4th Cir. 1985). <u>See also</u> <u>Johnson v. Puckett</u>, 930 F.2d 445, 447 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 890 (1991) ["In a federal court, habeas corpus can be invoked with respect to indictments only where they are 'so fatally defective' that under no circumstances could a valid conviction result from facts provable under the indictment."]; <u>Morlett v. Lynaugh</u>, 851 F.2d 1521, 1523 (5th Cir. 1988)["[T]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction."](quoting <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985)(other citation omitted)), <u>cert. denied</u>, 489 U.S. 1086 (1989).

There is no evidence of any such deficiency in this case.  With respect to Petitioner's claim that the indictment was defective for referring to a deadly weapon, the indictment also specifically stated "or while alleging either by words or action that he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon . . . ."  (R.p. 348); <u>see also</u> S.C. Code Ann. § 16-11-330(A).  Here, the victim testified that after Petitioner asked him for money, he lifted his shirt and showed the victim what the victim believed to be the butt of a gun.  (R.pp. 108-109, 119).  Hence, the evidence in the record shows that the victim believed that the Petitioner had a gun, and  Petitioner has not shown that the indictment is defective on this basis.  Therefore, Petitioner has shown no prejudice for counsel's failure to raise this issue at trial, and has not established it is a "substantial" claim.  <u>Gray</u>, 526 Fed.Appx. at 333.



31

Even if Petitioner is arguing that the trial court lacked subject matter jurisdiction due to the allegedly defective indictment, it is not for this Court to determine such issues of state law. Thompson v. Perry, No 06-3429, 2007 WL 2579570 at *4 (D.S.C. Sept. 4, 2007)["[I]t is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists."]; Dew v. Pancake, No. 07-37, 2007 WL 4302429 at *4 (W.D.Ky. Dec. 7, 2007)["This court does not review determinations of state law [regarding a subject matter jurisdiction challenge] made by South Carolina courts"].  In any event, the South Carolina Supreme Court noted in Winns v. State,

> that our decision in this case is consistent with the recently published opinion of State v. Gentry, Op. No. 25949 (S.C. Sup.Ct. filed March 7, 2005), which explains that indictments are notice documents, not documents required to confer subject matter jurisdiction.  See S.C. Const. art. V, Section 11 (providing that circuit courts are 'general trial court[s] with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law').

611 S.E.2d 901, 904 n. 2 (S.C. 2005).

In Gentry, the South Carolina Supreme Court overruled prior cases "to the extent that they combine the concept of the sufficiency of an indictment and the concept of subject matter jurisdiction." Gentry, 610 S.E.2d 494, 500-501 (S.C. 2005).

Therefore, under current South Carolina law, Petitioner's allegation with respect to a purported defect in his indictment is not even a subject matter jurisdiction claim. See Madden v. Warden, No. 07-1109, 2008 WL 351010, *5 (D.S.C. Feb. 7, 2008) [Discussing retroactivity of Gentry]; State v. Means, 626 S.E.2d 348, 352 (S.C. 2006)[same]; see also Mazyck v. Knowlin, No. 09-1222, 2009 WL 2447981 at * 1 (D.S.C. Aug. 7, 2009)["South Carolina Supreme Court has ruled that alleged deficiencies and irregularities in an indictment are not matters of subject matter jurisdiction."];  Evans v. State, 611 S.E.2d 510, 516-520 (S.C. 2005)[subject matter jurisdiction is



the power of a court to hear and determine cases whereas the indictment is a notice document and issues relating to the indictment generally are not issues of subject matter jurisdiction].  Hence, since there was no lack of subject matter jurisdiction on this basis, Petitioner's claim (to the extent that he is claiming that the trial court lacked subject matter jurisdiction) is without merit.

Therefore, Petitioner has failed to show cause and/or prejudice for his procedural default of any of these issues.  Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].  Nor has Petitioner shown that he is actually innocent, as cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004).  Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges on which he was found guilty.  See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an actual innocence claim).  While Petitioner offers speculation about the difference in the amount of money found on him as opposed to the amount that was taken from the store, other evidence in the record including eye witness identification is in the record.  Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if these claims are not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159



[a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Grounds Two, Three and Five for relief asserted by Petitioner in this habeas petition are procedurally barred from consideration by this Court, and must be dismissed.

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

April 12, 2016
Charleston, South Carolina

34

**Notice of Right to File Objections to Report and Recommendation**

     The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005).

     Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

     **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

